UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ESTATE OF JIMMIE MARTELL SANDERS,
by Special Administrator Diann Cannady,

                Plaintiff,

v.

JAY STEINKE,

                Defendant.

Case No. 2:20-cv-01164

## COMPLAINT

NOW COMES the Plaintiff, the Estate of Jimmie Martell Sanders, by Special Administrator Diann Cannady, and brings this civil action pursuant to 42 U.S.C. § 1983 and Wisconsin law against Defendant Jay Steinke:

### Introduction

1. Jimmie Martell Sanders was shot dead by City of Appleton Police Lieutenant Jay Steinke on May 21, 2017. At the time that Mr. Sanders was shot to death by Lt. Steinke, Mr. Sanders had committed no crime; Mr. Sanders was not acting suspiciously; and Mr. Sanders posed no threat to anyone. Mr. Sanders was 33 years old.

## The Parties and Other Persons

2. Plaintiff is the Estate of Jimmie Martell Sanders ("Mr. Sanders"). The special administration of Mr. Sanders' estate is pending in the Circuit Court for Milwaukee County, which his located within the Eastern District of Wisconsin.

3. Diann Cannady is not a plaintiff; however, she is Mr. Sanders' mother and the duly appointed special administrator of her son's estate. She resides and is domiciled in the Eastern District of Wisconsin.

4. Jimmie Dale Sanders is not a plaintiff; however, he is Mr. Sanders' father. He resides and is domiciled in the Eastern District of Wisconsin.

5. Jay Steinke ("Lt. Steinke") was a police lieutenant for the City of Appleton, which is located within the Eastern District of Wisconsin. On May 21, 2017, Lt. Steinke, while acting under color of law and within the scope of his employment as a police officer for the City of Appleton, killed Mr. Sanders by shooting him to death. Lt. Steinke is being sued in his individual capacity.

6. Erick Aguilar ("Ofc. Aguilar") is not a defendant; however, he was a patrol officer for the City of Appleton on May 21, 2017. Ofc. Aguilar was with Lt. Steinke during the events giving rise to this complaint and was also acting under color of law and within the scope of his employment as a police officer for the City of Appleton.

## Jurisdiction and Venue

7. This Court has jurisdiction over Plaintiff's claims and the Parties pursuant to 28 U.S.C. § 1331 and § 1343(a)(1), (3) and (4).

8. This Court has supplemental jurisdiction over Plaintiff's claims under Wisconsin law pursuant to 28 U.S.C. § 1367(a).

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**The Facts**

10. At all times relevant to the claims giving rise to this complaint, Lt. Steinke was acting under color of law and within the scope of his employment as a police lieutenant for the City of Appleton.

11. On May 21, 2017 Lt. Steinke and Ofc. Aguilar were patrolling the City of Appleton on foot.

12. Lt. Steinke and Ofc. Aguilar were alerted to a disturbance at Jack's Apple Pub, located at 535 West College Avenue in the City of Appleton. The alert call included information about a single gunshot.

13. When Lt. Steinke and Ofc. Aguilar arrived at Jack's Apple Pub, they did not hear any gunshots and they did not have a description of any person connected to the single gunshot in the alert.

14. Lt. Steinke nevertheless pulled out his gun, opened the door and stepped inside Jack's Apple Pub with gun in hand.

15. Lt. Steinke did not:

    a. hear any gunshots;

    b. have a description of any person responsible for the single gunshot in the alert;

    c. give any commands;

    d. announce his presence; nor

    e. see any threatening behavior.

16. Despite the above facts, Lt. Steinke fired at least four shots while inside of Jack's Apple Pub.

17. One of Lt. Steinke's gunshots hit Mr. Sanders in his lower back area.

18. Mr. Sanders did not die instantly. He suffered on the floor of Jack's Apple Pub and later at a hospital where he succumbed to his fatal injuries.

## The Claims

19. The Constitution unambiguously prohibits the deprivation of life and the use of excessive force in effecting seizures, except where lethal force is a last resort in the face of an imminent threat.

20. Before May 21, 2017 the law clearly established that a Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (emphasis removed). A seizure occurs "even when an unintended person or thing is the object of the detention or taking," so long as the taking was "willful," and not merely "an unknowing act." *Id.*; *see also Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012) (finding a seizure where persons "were the undifferentiated objects of shots intentionally fired by [] officers[.]").

21. In this complaint, Plaintiff alleges that Mr. Sanders was killed when Lt. Steinke shot at him and killed him. Mr. Sanders was thus seized for purposes of the Fourth Amendment because lethal force was directed at Mr. Sanders.

22. Lt. Steinke's use of lethal force in seizing Mr. Sanders was unreasonable, in part, because the use of lethal force against any person under the circumstances presented was unreasonable. *See, e.g., Lytle v. Bexar Cnty.*, 560, F.3d 404, 417 (5th Cir. 2009) (holding that a jury could find the use of lethal force against a passenger unreasonable because the intended target did not pose the requisite threat of harm); *id.*, at 413 (further finding that even if the officer were responding to a significant threat of harm, shooting at a vehicle in a residential area may be found unreasonable by a jury because of the risk of striking an unintended target.); *Boyd v. Benton Cnty.*, 374 F.3d 773, 779 (9th Cir. 2004) ("[I]t cannot be a reasonable use of force . . . to throw [an explosive weapon] 'blind' into a room occupied by innocent bystanders absent . . . careful consideration of alternatives and appropriate measures to reduce risk of injury.").

23. Furthermore, all Lt. Steinke knew when he entered Jack's Apple Pub was that a single shot had been fired. Upon entering Jack's Apple Pub, Lt. Steinke was not faced with a concrete and imminent threat of deadly harm. Lt. Steinke did not consider any non-lethal means of accomplishing his objectives.

## Relief Requested

24. Wherefore, Plaintiff demands judgment for him and against Lt. Steinke, along with the following relief:

[5 / 7]

a. An order awarding damages for conscious pain and suffering in an amount to be determined by a jury;

b. An order awarding damages for loss of life in an amount to be determined by a jury;

c. An order awarding punitive damages in an amount to be determined by a jury;

d. An order awarding damages for medical, funeral and burial expenses in an amount to be determined by a jury;

e. An order awarding costs and disbursements, including attorneys' and experts' fees in an amount to be determined by the Court; and

f. An order for further necessary and proper relief as determined by the Court.

**Demand for Trial by Jury**

25. Plaintiff hereby demands a trial by jury on each claim pursuant to Fed. R. Civ. P. 38(b).

Dated at the law office of GINGRAS THOMSEN & WACHS LLP in Milwaukee, Wisconsin, on this 28th day of July, 2020.

*/s/ William F. Sulton*
WILLIAM F. SULTON

GINGRAS THOMSEN & WACHS LLP
219 N Milwaukee St, Ste 520
Milwaukee, WI 53202
414-935-5490 (direct)
414-778-0700 (main)
wsulton@gtwlawyers.com

*Attorneys for Plaintiff*