UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

ESTATE OF JIMMIE MARTELL
SANDERS,   Case No. 2:20-cv-01164-PP

    Plaintiff,

v.

JAY STEINKE,

    Defendant.

---

**BRIEF IN OPPOSITION TO DEFENDANT JAY STEINKE'S
MOTION FOR SUMMARY JUDGMENT
BY PLAINTIFF ESTATE OF JIMMIE SANDERS**

---

NOW COMES Plaintiff Estate of Jimmie Martell Sanders, by its attorneys, THE SULTON LAW FIRM LLC, by Attorney William F. Sulton, and submits this brief in opposition to Defendant Jay Steinke's motion for summary judgment (Dkt. 26).

**1. Introduction**

On May 21, 2017, Jimmie Martell Sanders ("Mr. Sanders") was a patron at Jack's Apple Pub (or "bar") in the City of Appleton. A fight broke out between Leander Moffitt ("Mr. Moffitt") and Henry Nellum ("Mr. Nellum"). During the fight, Mr. Nellum pulled out a gun. Mr. Moffitt grabbed Mr. Nellum and the gun discharged. Both men fell to the ground. Mr. Nellum landed on top of Mr. Moffitt. As Mr. Nellum stood up, Laquan Wade ("Mr. Wade") grabbed Mr. Nellum from

behind and the gun fell. Mr. Sanders picked up the gun and was shot in the back by Lt. Steinke.

Lieutenant Carlos del Plaine ("Lt. del Plaine") and Sergeant Matthew Ollwerther ("Sgt. Ollwerther") heard a call over radio about a shooting at the bar and drove to the bar. When Lt. del Plaine arrived, he has Lt. Steinke who shot. Lt. Steinke replied that he shot. Lt. Steinke described the person he shot at as wearing all black. Mr. Sanders was the only person in the bar at that time wearing all black.

As Mr. Sanders was lying on the floor of the bar gasping for air, Sgt. Ollwerther entered the bar with Lt. del Plaine and other officers. Significantly, Mr. Nellum had exited the bar and was arrested prior to Sgt. Ollwerther and Lt. del Plaine's entry into the bar. Because Mr. Sanders was the only person who matched Lt. Steinke's description of the person he shot at, Sgt. Ollwerther decided to step on Mr. Sanders' arm—even though Sgt. Ollwerther knew that Mr. Sanders was in medical distress. Because Mr. Sanders was the only person who matched Lt. Steinke's description of the person he shot at, Lt. del Plaine decided to handcuff Mr. Sanders—even though Lt. del Plaine knew that Mr. Sanders was in medical distress. Mr. Sanders was eventually taken to a hospital where he was pronounced dead.

Mr. Sanders' mother, Diann Cannady, filed this lawsuit on behalf of her son's estate under 42 U.S.C. § 1983. This lawsuit alleges that Lt. Steinke's decision to shoot Mr. Sanders to death was a violation of rights secured by the

[2 / 10]
Case 2:20-cv-01164-PP     Filed 12/03/21     Page 2 of 10     Document 36

Fourth Amendment to the United States Constitution. Disputes of fact preclude summary judgment for Lt. Steinke.

### 2. Summary Judgment Standard

The purpose of a summary judgment motion is to assess whether trial is necessary. If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* If the initial burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*

A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Thus, on a motion for summary judgment, the Court is to view the evidence "through the prism of the substantive evidentiary burden." *Id.* at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id.*

### 3. Argument

#### a. There is evidence that Lt. Steinke intended to shoot Mr. Sanders and that decision was unreasonable under the Fourth Amendment.

Lt. Steinke was on foot patrol near Jacks' Apple Pub. (Dkt. 28 at ¶5.) One or more persons went up to Lt. Steinke and told him that there was a shooting at the bar. (*Id.*, at ¶8.) Lt. Steinke was not given a description of a person responsible, however. When Lt. Steinke arrived at the bar, he saw people standing next to the bar's door (both inside and outside). (Dkt. 28 at ¶17.) Lt. Steinke did not see or hear any gunshots. (*Id.*, at ¶¶14-15.) As Lt. Steinke crossed the threshold of the bar's door, he did not identify himself or give any commands but nevertheless started shooting. (Dkt. 34 at ¶¶9, 12-14.) A woman in a white shirt turned towards Lt. Steinke and pushed him out of the bar. (Dkt. 28 at ¶38.) Mr. Sanders died because of Lt. Steinke's shooting. (Dkt. 34 at ¶1.)

In *Davis v. Ortiz*, 987 F.3d 635 (7th Cir. 2021), a sheriff's deputy fired four shots into a car the deputy claimed was driving at him. The Seventh Circuit rejected the deputy's argument that he was only trying to shoot the driver. The Seventh Circuit explained that "[t]he pertinent question is whether a jury could find that [the] deputy's actions—firing repeatedly at a moving vehicle as it was leaving the parking lot—were objectively unreasonable under all the circumstances, and thus amount to a Fourth Amendment violation." *Id.*, at 640. Put another way, whether the deputy's "actions were objectively reasonable . . . cannot [be] resolve[d] . . . this stage." *Id.*, at 641.

The same conclusion should be reached in this case. Mr. Sanders's estate disputes that Mr. Nellum was pointing a gun at Lt. Steinke when he started shooting. (Dkt. 34 at ¶¶17-18.) Mr. Sanders's estate also disputes that Mr. Nellum was moving towards Lt. Steinke when he started shooting. (*Id.*) Mr. Sanders's estate contends that Lt. Steinke's description of the person he intended to shoot at matches only Mr. Sanders. (*Id.*, at ¶33.) Moreover, Mr. Sanders's estate submits that shooting into a crowded bar without a description of a suspect, without hearing or seeing any violation of law, and without announcing yourself or giving any commands is objectively unreasonable under the Fourth Amendment. *See, e.g.*, *Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012) (finding a seizure where persons "were the undifferentiated objects of shots intentionally fired by [] officers[.]"); *Lytle v. Bexar Cnty.*, 560, F.3d 404, 417 (5th Cir. 2009) (holding that a jury could find the use of lethal force against a passenger unreasonable because the intended target did not pose the requisite threat of harm and further finding that even if the officer were responding to a significant threat of harm, shooting at a vehicle in a residential area may be found unreasonable by a jury because of the risk of striking an unintended target.); *Boyd v. Benton Cnty.*, 374 F.3d 773, 779 (9th Cir. 2004) ("[I]t cannot be a reasonable use of force . . . to throw [an explosive weapon] 'blind' into a room occupied by innocent bystanders absent . . . careful consideration of alternatives and appropriate measures to reduce risk of injury.").

[5 / 10]

Case 2:20-cv-01164-PP   Filed 12/03/21   Page 5 of 10   Document 36

In *Schaefer v. Goch*, the Seventh Circuit considered the police shooting death of Kathy Nieslowski. 153 F.3d 793 (7th Cir. 1998). In *Schaefer*, police received a report that John Nieslowki had threatened bar patrons with a shotgun. *Id.*, at 794. Mr. Nieslowski was known to police to be a "fighter," a person with military experience, and very strong. *Id.* The police sought and received a search no-knock warrant for a house where Mr. Nieslowski was. *Id.* As police were attempting to execute the warrant, Mr. Nieslowski shot at police—causing them to retreat. *Id.* Mrs. Nieslowski (Mr. Nieslowski's wife) exited the house and got down on her hands and knees, as instructed by police. *Id.* Mr. Nieslowski exited the house, grabbed Mrs. Nieslowski by the hair and began pulling her back inside the house. *Id.* Police shouted "Sherriff's Department, let me see your hands" and "Put your gun down." *Id.*, at 795. After Mr. Nieslowski released his grip on Ms. Nieslowski, police started shooting—killing Mrs. and Mr. Nieslowski. *Id.*

Mrs. Nieslowski's parents filed suit under the Fourth Amendment against the sheriff's deputy who shot her to death. The plaintiffs argued that Mrs. Nieslowski was seized when she complied with police commands to get down. *Id.*, at 796. The Seventh Circuit disagreed, "the fact that Kathy was temporarily immobile does not necessarily mean that her freedom of movement was terminated." *Id.*, at 796. The Seventh Circuit further explained that the seizure could not be considered "as continuing once John began to pull Kathy back inside." *Id.*

The police shooting death of Mr. Sanders differs greatly. Lt. Steinke was not executing an arrest warrant. Lt. Steinke did not have any description of the shooter. Lt. Steinke did not identify himself as police or give any commands. And Lt. Steinke's shooting took place in a crowded bar.

### b. Lt. Steinke is not entitled to qualified immunity.

Qualified immunity works only "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The qualified immunity analysis is not a "scavenger hunt for prior cases with precisely the same facts[.]" *Case v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotation marks omitted). As such, a right may be clearly established even without on-point precedent where defendants' conduct clearly and obviously violates the Constitution. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The "salient question" is not whether there are previous cases with facts that are "fundamentally similar," but rather, "whether the state of the law [at the time of defendants' conduct] gave [them] fair warning that [plaintiffs'] alleged treatment was unconstitutional." *Id.* When a public official's conduct is so egregious even a general precedent applies with "obvious clarity," the right can be clearly established notwithstanding the absence of binding authority involving materially similar facts. *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) (internal quotation makes omitted); *see also Hope*, 536 U.S. at 741 (stating defendants "can still be on notice that their conduct violates established law even in novel factual circumstances," so long as the law provided "fair warning" their

conduct was unconstitutional). In *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011), the Supreme Court reaffirmed that "qualified immunity is lost when plaintiffs point either to 'cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority.'" *Id.*, 563 U.S. at 742 (*quoting Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Following the Supreme Court's lead, the Seventh Circuit considers both binding circuit precedent and decisions from other circuits in determining whether the law is clearly established. *Werner v. Wall*, 836 F.3d 751, 762 (7th Cir. 2016).

At the time of the incidents at issue here occurred, Supreme Court precedent provided clear notice that "the reasonableness of a seizure under the Fourth Amendment is determined by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 187 (2004) (internal quotations omitted). When the question of whether constitutional violations occurred depends on this sort of balancing of interests, qualified immunity should not apply when, "given the factual disputes identified by the district court and taking the plaintiffs' side of those disputes, [a] case does not require any real balancing at all" because the officers "do not have any relevant, legitimate interests to put on their side of the[] scales." *Kinney v. Weaver*, 367 F.3d 337, 372 (5th Cir. 2004) (en banc). "[C]ases show that it is entirely appropriate to deny qualified immunity when the balance of cognizable interests weighs so starkly in the plaintiff's favor" because "the illegality of the

Police Official['s] conduct is sufficiently clear that [he] can fairly be said to have been on notice of the impropriety of [his] actions." *Id.*

Lt. Steinke argues only that he is entitled qualified immunity because "Plaintiff cannot cite to any case that clearly established in May of 2017, that Lt. Steinke's split-second decision to use lethal force on Mr. Nellum who was suspected of firing a gun at Pub patrons and who was seen running toward Lt. Steinke and other patrons with a gun was a clear violation of Mr. Sander's constitutional rights." (Dkt. 27 at 12.) On the contrary, Lt. Steinke has not established that the absence of a disputed fact about whether Mr. Nellum was suspected of firing a gun at Jack's Apple Pub or whether Mr. Nellum was running towards Lt. Steinke or others. Indeed, Mr. Sanders's estate disputes those assertions.

**4. Conclusion**

For all of the above reasons, the Estate of Jimmie Martell Sanders respectfully requests that the Court enter an order denying Lt. Steinke's motion for summary judgment.

Dated at THE SULTON LAW FIRM LLC in Milwaukee, Wisconsin, on this 3rd day of December, 2021.

>
> */s/ William F. Sulton*
> WILLIAM F. SULTON
>
> THE SULTON LAW FIRM LLC
> 2745 N. Dr. M.L.K. Drive
> Suite 202
> Milwaukee, WI 53212
> 414-477-0088 (direct)
> 414-250-7676 (fax)
> william@sultonlaw.com
>
> *Attorneys for Plaintiff*