UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF JIMMIE MARTELL SANDERS,
by Special Administrator Diann Cannady,

           Plaintiff,

                                  Case No. 20-CV-1164

vs.

JAY STEINKE,

           Defendant.

---

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Defendant, Jay Steinke, by his attorneys, Gunta Law Offices, S.C., submits this Reply Memorandum in Support of his Motion for Summary Judgment seeking dismissal of Plaintiff's claims in their entirety.

### INTRODUCTION

Plaintiff's bold attempt to assert that Mr. Nellum was shot in the arm by his own gun, which Mr. Sanders had in his hand when Lt. Steinke entered the bar, is astonishing and would implicate a basis for Lt. Steinke to have directed force at Mr. Sanders. However, this is not what the undisputed evidence shows. The undisputed evidence shows that Mr. Nellum was advancing towards Lt. Steinke and those at the front of the bar with a gun in his hand. (Dkt. 35, ¶ 34) After Mr. Nellum was shot by Lt. Steinke, Mr. Nellum fell to the ground and he reached out and handed his gun to his girlfriend, Dree Sullivan. (Dkt. 35, ¶ 96) Ms. Sullivan pled guilty to aiding Mr. Nellum by taking his gun out of his hand after he was shot by Lt. Steinke and hiding it from the police. (Dkt. 35, ¶ 96)

Plaintiff's Response completely fails to address this, and Defendant's argument that the Fourth Amendment is not implicated and cannot provide a basis for a Section 1983 claim where Mr. Sanders was not the intended target of Lt. Steinke's use of force. (*See* Dkt. 36) Such failure constitutes a waiver in this district, thus entitling the Defendant to summary judgment on those claims.

Therefore, this Court must grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's Fourth Amendment Claim with prejudice.

**DISCUSSION**

**I.      THERE IS NO GENUINE DISPUTE OF MATERIAL FACT.**

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). However, this does not extend to drawing inferences that are supported by only speculation or conjecture. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Even if Plaintiff disputes some of the facts Defendant provided to support his motion for summary judgment, the mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *See Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 973 (7th Cir. 2000). In other words, Plaintiff can only successfully defeat Defendant's summary judgment motion if he presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck& Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

Here, Plaintiff has attempted to defeat Defendant's Summary Judgment Motion by arguing that there is a dispute of fact as to if Mr. Nellum was pointing a gun or moving towards Lt. Steinke when he started shooting. (Dkt. 36, p. 5)

In support of these factual disputes, Plaintiff cites only to the deposition testimony of Donna Skogeboe. (*See* Dkt. 36, 5; Dkt. 34, ¶¶ 17-18) The cited deposition testimony dealt exclusively with Ms. Skogeboe's testimony regarding her review of the video of the incident. (*See* Def Resp. to Pltf's PFOF ¶¶17-18) The video shown to her was the Pub bar footage at the 17:04 minute mark or 1:47:12 a.m. (*Id.*) This portion of the video occurred after Lt. Steinke fired his shots at Mr. Nellum. (*Id.*) However, there is no dispute that Ms. Skogeboe testified that Mr. Nellum was running towards Lt. Steinke with the gun in his left hand when Lt. Steinke appeared in the bar doorway. (*See* Def. Reply PFOF ¶ 27) Thus, Plaintiff has not raised a genuine dispute of material fact and the Defendant is entitled to summary judgment.

## II. PLAINTIFF FAILED TO ADDRESS THE DEFENDANT'S ARGUMENT THAT THE FOURTH AMENDMENT IS NOT IMPLICATED WHERE MR. SANDERS WAS NOT THE INTENDED TARGET OF LT. STEINKE'S USE OF FORCE CONSTITUTES AS A WAIVER OF HIS CLAIM.

Plaintiff's Response to Defendant's Motion for Summary Judgment completely failed to address the following arguments:

I. The Fourth Amendment is not Implicated and Cannot Provide the Basis for a Section 1983 Claim where Mr. Sanders was not the Intended Target of Lt. Steinke's Use of Force.

II. Assuming Arguendo Plaintiff Could Plead a Fourth Amendment Cause of Action Against Lt. Steinke for his Use of Force Directed at Mr. Nellum, Such a Claim Would Also Fail.

*See Generally* (Dkt. 36, Pltfs' Response)

In this Circuit, a failure to respond is considered a waiver of those claims. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1075 (7th Cir. 2016)(concluding that the counts were waived since Plaintiffs never responded to Defendants' arguments) *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (underdeveloped or conclusory arguments in response to the motion for summary judgment constitutes waiver); *Walton v. U.S. Steel Corp.*, 497 F. App'x

3

651, 655 (7th Cir. 2012) (non-movant waived argument "by failing to raise it in response to summary judgment"); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions."); *see also U.S. Bank Nat. Ass'n v. Long* at \*5. Therefore, the Defendant is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

### III.     THE COURT SHOULD NOT ACCEPT PLAINTIFF'S FACTS.

Plaintiff has proffered facts that no reasonable jury could believe, and the Court should reject Plaintiff's facts where it refutes the video evidence. Courts are instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, it should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *Rowe v. DeRosa*, No. 15-C-1006, 2018 WL 502658, at \*7 (E.D. Wis. Jan. 22, 2018). Furthermore, courts in this Circuit have ruled that "[t]he Court may consider video evidence, and in situations where the video evidence refutes the plaintiff's account of the facts, 'the court should not accept plaintiff's story for purposes of summary judgment.'" *Jackson v. City of Bloomington*, No. 17-CV-1046-JES-JEH, 2019 WL 570729, at \*6 (C.D. Ill. Feb. 12, 2019); *Gillis v. Pollard*, 554 F. App'x 502, 506 (7th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) Indeed, *Scott v. Harris* ruled that the summary judgment standard adjusts when there is video evidence and that courts should "view facts in the light depicted by the videotape." *Scott* at 378–81.

Here, the Court should not accept Plaintiff's distorted facts, which refutes video evidence. For instance, Plaintiff has proffered facts that Mr. Nellum was inexplicably shot in the arm by his own gun; that Mr. Sanders had the gun in his hand when Lt. Steinke entered the bar; and that Mr.

Nellum was not advancing on Lt. Steinke when Lt. Steinke shot at Mr. Nellum. (Dkt. 34, ¶¶ 6-8, 17) No reasonable jury could believe Plaintiff's proffered facts.

In Molly Pickart's cell phone footage, it clearly shows Mr. Nellum running towards Lt. Steinke as Lt. Steinke enters the bar doorway. (*See* Def's Resp. to Pltf's PFOF ¶ 17) Lt. Steinke then fired four gunshots at Mr. Nellum as he advanced on him, and Mr. Nellum fell to the ground near the State Street doorway after being shot. (Dkt. 28, ¶¶ 35-36, 38, 41) In the bar camera footage, at 1:46:33 a.m., Ms. Sullivan then walks to Mr. Nellum who reaches out and hands his gun to Ms. Sullivan. (Dkt. 35, ¶ 63) Ms. Sullivan then exited the bar and hid Mr. Nellum's gun from the police. (Dkt. 35, ¶¶ 73, 96) Ms. Sullivan later pled guilty to taking the handgun from Mr. Nellum and fleeing the scene. (*Id.*) The video evidence shows that Mr. Nellum still possessed the gun after being shot by Lt. Steinke and Ms. Sullivan has pled guilty to taking the gun from Mr. Nellum. As such, Plaintiff's factual assertions should not be accepted by the Court.

## IV.  EVEN ASSUMING ARGUENDO THAT PLAINTIFF'S FACTS WERE TRUE, THERE WOULD BE NO FOURTH AMENDMENT VIOLATION.

Even if the Court were to accept Plaintiff's facts as true, there would still be no Fourth Amendment violation. Plaintiff contends that Mr. Nellum was involved in a fight with Mr. Moffitt when Mr. Nellum pulled out a gun and discharged it. (Dkt. 34, ¶ 4) Plaintiff contends that after Mr. Moffitt and Mr. Nellum fell to the ground, Mr. Sanders and Laquan Wade intervened, and Mr. Nellum was inexplicably shot in the arm. (Dkt. 34, ¶¶ 5-6) Plaintiff contends that Mr. Sanders had the gun in his hand and was shot by Lt. Steinke. (Dkt. 34, ¶ 8)

As explained in the moving Brief, an officer can use deadly force when a suspect is <u>threatening</u> the lives of an officer or others with a deadly weapon or where there is probable cause to believe he has committed a crime involving the infliction or threatened infliction of serious physical harm. *See Tennessee v. Garner,* supra, 471 U.S. at 11-12; *White v. Pauly,* 137 S. Ct. 548,

551 (2017); *Scott v. Harris,* 127 S. Ct. 1769, 1777-78 (2007); *Ryburn v. Huff*, 132 S. Ct. 987, 991-92 (2012); *Scott v. Edinburg* 346 F.3d 752, 756 (7th Cir. 2003); *Ford v. Childers,* 855 F.2d 1271, 1275 (7th Cir. 1988); *Helman v. Dulaime,* 742 F.3d 760, 763 (7th Cir. 2014); *Henning v. O'Leary,* 477 F.3d 492, 495 (7th Cir. 2007); *Conley-Eaglebear v. Miller,* (No. 1:2014cv1175 (E.D. Wis. 2016)); *Plakas v. Drinski*, 19 F.3d 1143, 1146, 1149-50 (7th Cir. 1994); *Mararvilla v. US,* 867 F. Supp. 1363, 1370, 1375 (N.D. Ind. 1994), aff'd 60 F.3d 1230 (7th Cir. 1995). Under Plaintiff's proposed facts, Lt. Steinke would have been entitled to use deadly force based on Mr. Sanders suggested shooting of Mr. Nellum and because he was holding a deadly weapon in his hands seconds after shots were fired in the bar. Plaintiff's placement of Mr. Nellum's gun in Mr. Sanders does not indicate that Lt. Steinke's use of force was unreasonable.

In addition, the cases cited by Plaintiff are readily distinguishable or bolster Defendant's arguments. The events in *Estate of Davis v. Ortiz*, involved a botched drug bust where the officer, Ortiz fired four shots at a vehicle driving towards him. 987 F.3d 635, 637–38 (7th Cir. 2021. The passenger of the vehicle, Davis was killed. *Id.* The district court denied Ortiz's motion for qualified immunity finding that Ortiz's testimony was not enough to establish as a matter of law that Ortiz was aiming exclusively for the driver based on Ortiz's own account that his "intent was to stop the threat that was coming at [him]," and "firing into the vehicle was the way to stop that threat." *Id.* at 638. The district court specifically found that at "no time did Ortiz state that he was aiming his weapon solely at [the driver] in such a manner as to eliminate all potential inferences otherwise." *Id.* at 640. Ortiz filed an interlocutory appeal from the district court's order and the Court of Appels held the pertinent question to be whether a jury could find that Ortiz's actions—firing repeatedly at a moving vehicle as it was leaving the parking lot—was objectively unreasonable under all the circumstances, and thus amount to a Fourth Amendment violation. *Id.*

Relying on Ortiz's own statement the court found evidence to support a finding that Ortiz was aiming at the car as a whole, so summary judgment was not appropriate. *Id.*

Here, Lt. Steinke unequivocally stated he was aiming exclusively at Nellum. (Dkt. 28, ¶¶ 35, 94)  There is no factual dispute as to who or what Lt. Steinke's shots were intended for.

The second case cited by Plaintiff, *Schaefer v. Goch*, supports the defendant's position, and Plaintiff's attempt to distinguish the case fails because the fact that Lt. Steinke was not executing an arrest warrant and did not have a description of the shooter are nonstarters where those facts had nothing to do with the holding.  *Schaefer* involved a hostage situation where the officers shot both the gunman and the hostage.  153 F.3d 793, 794–95 (7th Cir. 1998).  The Seventh Circuit ruled that the Fourth Amendment was not applicable to a hostage because the police command for her to get on the ground was an attempted seizure, and not a seizure. *Id.* at 796.

The court specifically addressed the Supreme Court holding in *County of Sacramento v. Lewis*, 523 U.S. 833, (1998) in which the Court held that no seizure took place when a police officer pursued a suspect and his passenger at high speeds and then struck and killed the passenger after the suspect's motorcycle tipped over.  In *Lewis*, the Court distinguished the situation from the one present in *Brower v. County of Inyo*, 489 U.S. 593, (1989), in which a suspect fleeing officers at high speed died after crashing into a police roadblock erected for the purpose of stopping him. *Id.* at 844-45.  The Court noted that in *Brower* it had held that a seizure required "a governmental termination of freedom of movement through means intentionally applied." *Id.*  In *Lewis*, because the officer did not intend to seize Lewis by striking him with his vehicle, Lewis was not seized even though his freedom of movement was undoubtedly terminated. *Id.* at 854.

The issue confronting the court in *Schaefer* does not exist here because there was no attempt to seize Mr. Sanders.  Rather this case is just like *Lewis* where Lt. Steinke never intended

7

to seize Mr. Sanders. Therefore, this Court should find Mr. Sanders was not seized and dismiss Plaintiff's claim.

## V. LT. STEINKE IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity protects government officials from liability, even in cases with plainly bad outcomes, if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

It is particularly important that courts apply qualified immunity correctly in excessive force cases because excessive force is an area of the law "in which the result depends very much on the facts of each case." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018); *See also City of Tahlequah, Oklahoma v. Bond*, —U.S.—, No. 20-1668, 2021 WL 4822664, at *2 (U.S. Oct. 18, 2021) ("[I]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.") (citation and quotation marks omitted). Police officers are entitled to qualified immunity in Fourth Amendment excessive force cases "unless existing precedent squarely governs the specific facts at issue." *Cibulka v. City of Madison*, 992 F.3d 633, 639 (7th Cir. 2021). Thus, to overcome qualified immunity in an excessive-force case, a plaintiff must (1) identify a closely analogous case that established a right to be free from the type of force the police officers used, or (2) show that the

force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment. *Id.* Plaintiff fails to show either.

Plaintiff's Response does not identify any case law supporting that an officer could not use deadly force on a gunman during an active shooter situation, or any case holding an officer liable under the Fourth Amendment when he did not intend to seize the Plaintiff. (Dkt. 36, p. 7-9) Plaintiff's failure to do so concedes there is no case law that would have adequately warned Lt. Steinke in the instant case that his conduct violated a constitutionally protected right. Plaintiff correctly states that the Seventh Circuit considers both binding circuit precedent and decisions from other circuits in determining whether the law is clearly established. (Dkt. 36, p. 8) However, Plaintiff misapplies the concept by arguing this Court should apply Fifth Circuit qualified immunity jurisprudence rather than citing to a Fifth Circuit case with closely analogous facts. (Dkt. 36, p. 7-9)

Further, Plaintiff's attempt to argue against qualified immunity by arguing disputes of fact that directly contradict the video evidence in this case is a nonstarter as addressed above. (Dkt. 36, p. 9) Thus, Lt. Steinke is entitled to qualified immunity because Plaintiff could not identify any case that would have clearly placed Lt. Steinke on notice that he could utilize deadly force against an active shooter. Indeed, the law clearly affords for an officer to have the ability to utilize such force to protect themselves and others. *See Tennessee v. Garner,* supra, 471 U.S. at 11-12; *White v. Pauly,* 137 S. Ct. 548, 551 (2017); *Scott v. Harris,* 127 S. Ct. 1769, 1777-78 (2007); *Ryburn v. Huff*, 132 S. Ct. 987, 991-92 (2012); *Scott v. Edinburg* 346 F.3d 752, 756 (7th Cir. 2003); *Ford v. Childers,* 855 F.2d 1271, 1275 (7th Cir. 1988); *Helman v. Dulaime,* 742 F.3d 760, 763 (7th Cir. 2014); *Henning v. O'Leary,* 477 F.3d 492, 495 (7th Cir. 2007); *Conley-Eaglebear v. Miller,* (No. 1:2014cv1175 (E.D. Wis. 2016)); *Plakas v. Drinski*, 19 F.3d 1143, 1146, 1149-50 (7th Cir. 1994);

9

*Mararvilla v. US,* 867 F. Supp. 1363, 1370, 1375 (N.D. Ind. 1994), aff'd 60 F.3d 1230 (7th Cir. 1995). Therefore, Plaintiff's claim should be dismissed as a matter of law on qualified immunity grounds.

## CONCLUSION

For the reasons set forth in the moving Brief and in this Reply, Defendant respectfully requests that the Court grant him summary judgment dismissing Plaintiff's claim against him, with prejudice.

Dated at Wauwatosa, Wisconsin this 17th day of December 2021.

**GUNTA LAW OFFICES, S.C.**
Attorneys for Defendant

*/s/ Kyle R. Moore*
Gregg J. Gunta, WI Bar No. 1004322
Ann C. Wirth, WI Bar No. 1002469
Jasmyne M. Baynard, WI Bar No. 1099898
Kyle R. Moore, WI Bar No. 1101745
Kiley B. Zellner, WI Bar No. 1056806
9898 W. Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: 414) 291-7979 / F: (414) 291-7960
Emails: gjg@guntalaw.com
acw@guntalaw.com
jmb@guntalaw.com
krm@guntalaw.com
kbz@guntalaw.com